# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 2:18-CR-00058-6 |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| KING HAMIDU, | : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before the Court on the Defendant's Motion for Compassionate Release (ECF No. 224), supplemented by counsel on April 19, 2021 (ECF No. 234). For the following reasons, Defendant's Motion is **DENIED**.

## I.  BACKGROUND

On September 27, 2019, King Hamidu was sentenced to 42 months of imprisonment and 3 years of supervised release for one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (ECF Nos. 176). Mr. Hamidu began serving his sentence on November 10, 2019. In December 2020, Mr. Hamidu filed a motion for compassionate release, which the Government opposed. (ECF Nos. 220, 222). This Court denied Mr. Hamidu's first motion, finding that Mr. Hamidu had not presented "extraordinary and compelling reasons" under the First Step Act. (ECF No. 223).

Mr. Hamidu now moves again for compassionate release, alleging that his health conditions place him at increased risk of suffering severe illness or dying from COVID-19. (ECF No. 224) ("Second Motion"). His motion was supplemented by counsel; the supplement argues that the CDC has recognized that people with liver disease, such as Mr. Hamidu, might be at

increased risk for severe illness and Mr. Hamidu should be granted home confinement. (ECF No. 234). The Government opposes his Second Motion, arguing that Mr. Hamidu has not exhausted his administrative remedies, that he cannot present extraordinary and compelling reasons for sentence reduction based on his medical conditions, that Mr. Hamidu's ICE detainer undermines his request for compassionate release, and a sentence reduction would fail to address the purposes of sentencing. (ECF No. 239). The Second Motion is now ripe for this Court's consideration.

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or 30-day waiting requirement has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). A district court's decision under Section 3582(c)(1)(A) will be reviewed for abuse of discretion and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). In *United States v. Jones*, the Sixth Circuit recently clarified the mechanics of compassionate review under 18 U.S.C. § 3582 when an incarcerated person has brought a motion on his own behalf. In *Jones*, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.* at 1102.

The *Jones* court set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id.* at 1107–08. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id*. Second, a court must determine whether the reduction is consistent with applicable policy statements issued

2

by the Sentencing Commission. *Id.* at 1108. Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### III. LAW & ANALYSIS

#### A. Exhaustion of Administrative Remedies

When reviewing motions for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A), district courts' first step is to ask: has the movant either fully exhausted all administrative rights or have 30 days lapsed since the movant received the warden's letter denying the request. If either prong is answered in the affirmative, courts then inquire if extraordinary and compelling circumstances justify release. 18 U.S.C. § 3582(c)(1)(A); *see also Alam*, 960 F.3d at 832. The Sixth Circuit has held that this requirement is not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Id.* at 833.

In his Second Motion, Mr. Hamidu notes that his request for compassionate release and/or home confinement was rejected by Moshannon Valley Correctional Facility in July 2020. (ECF No. 234). The Government argues that Mr. Hamidu has failed to exhaust because he has not submitted any evidence that he submitted a request to his new facility, FCI Allenwood Low. (ECF No. 239 at 3). Mr. Hamidu was transferred after the Government did not renew its contract

with his previous correctional facility. (ECF No. 234 at 2; ECF No. 234-3). In response, the Defendant argues that he has no control over the duration of his stay in a correctional facility and that the Government subjected him to the transfer. (ECF No. 242 at 1–2). He argues that *Alam* does not foreclose a finding of statutory exhaustion where the actions of the BOP, not the incarcerated person, frustrate the exhaustion requirement. (*Id.* at 2). He also contends that finding exhaustion in these circumstances would not lead to the unfairness and line-jumping feared by the Sixth Circuit in *Alam*. (*Id.*).

This Court finds that Mr. Hamidu has met the administrative exhaustion requirement because, at the time he filed his motion, he had submitted a request to the Warden of his facility and more than thirty days had elapsed. Mr. Hamidu filed his Motion for Compassionate Release on February 17, 2021, while he was incarcerated at Moshannon Valley. At the time he submitted his *pro se* motion, he had exhausted his administrative remedies. (ECF No. 223 at 3). He was subsequently transferred to FCI Allenwood Low while his motion was pending. Other district courts have also found the First Step Act's statutory exhaustion requirement to be satisfied where an individual submits a request for compassionate release, is transferred to a new facility, and then does not file a subsequent request at the new facility. *See, e.g.*, *United States v. Allen*, No. 19-0139, 2021 WL 1518012, at *2 (W.D. Pa. Apr. 16, 2021) (finding defendant had exhausted administrative remedies where he submitted request to his federal facility and was subsequently transferred to a residential reentry field office); *United States v. Porter*, No. 17-CR-30057, 2020 U.S. Dist. LEXIS 236473, at *7 (C.D. Ill. Dec. 16, 2020) (finding that transfer does not affect exhaustion requirement where request was filed at previous facility); *United States v. Hooker*, No. 18 Cr. 768, 2020 WL 6504539, at *1–2 (S.D.N.Y. Nov. 5, 2020) (finding that defendant had satisfied the exhaustion requirement by requesting compassionate release from the warden of his

first facility, even though he was transferred to another facility after filing his motion for compassionate release with the court); *United States v. Davidson*, Nos. 2:16-cr-00139-2, 2:17-cr-00334, 2:20-cv-00327, 2020 WL 4877255, at *6–7 (W.D. Pa. Aug. 20, 2020) (explaining that "allowing a defendant's request from a prior facility to start the thirty-day clock does not impede" BOP's ability to implement a comprehensive compassionate release program); *United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 WL 3050705, at *2–3, *4 & n.5 (D. Ariz. June 8, 2020) (considering merits of compassionate release request where defendant submitted request to his prior facility).[1] As noted by the court in *United States v. Davidson*, such a defendant "follow[s] the rules." 2020 WL 4877255, at *6–7. More than thirty days have passed since the Defendant's first formal request was filed, so his Second Motion for Compassionate Release is ripe for consideration.

### B. Extraordinary and Compelling Reasons

Under the analysis set forth in *Jones*, this Court must first determine whether "extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i). This court has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

In his Second Motion, Mr. Hamidu argues that the CDC has acknowledged that adults of any age with certain underlying medical conditions, including liver disease (such as hepatitis B

---

[1] This court also notes that the United States has conceded the issue of statutory exhaustion in other instances where a defendant was transferred between facilities while a request was pending at the original facility and no renewed request was filed at the subsequent facility. *See, e.g.*, *United States v. Lawrence*, No. 16-cr-30002, 2021 WL 1254350, at *2 (C.D. Ill. Apr. 5, 2021); *United States v. Thomas*, No. 18-20597, slip op. (E.D. Mich. May 18, 2021); *United States v. McKay*, No. 1:18-cr-00339-PAC-7, 2021 WL 807108, at *2–3 (S.D.N.Y. Mar. 3, 2021) (finding defendant only needed to request compassionate release once and may thereafter bring motion to district court when warden denied request or left it unanswered); *United States v. Hooker*, No. 18 Cr. 768, 2020 WL 6504539, at *1–2 (S.D.N.Y. Nov. 5, 2020) (finding that defendant had satisfied the exhaustion requirement by requesting compassionate release from the warden of his first facility, even though he was transferred to another facility after filing his motion for compassionate release with the court). This inconsistency in position undermines the argument that allowing the original compassionate release request to suffice would undermine BOP's attempt to deal uniformly with such requests.

or hepatitis C) might be at an increased risk for severe illness if they contract COVID-19. (ECF No. 234 at 3). The Government opposes his contention that his health conditions present extraordinary and compelling reasons warranting a sentence reduction. (ECF No. 239). The Government concedes that the CDC has recognized hepatitis B as a condition that might place an individual at increased risk for severe illness if he contracts COVID-19. (*Id.* at 4–5). The Government also notes that the CDC has linked risk of severe illness to whether the underlying illness is well controlled. (*Id.* at 4–5). The Government contends that the medical records show that Mr. Hamidu's hepatitis B is well controlled because he is asymptomatic, taking no medications for the condition, and has had no complications or symptoms related to hepatitis B while incarcerated. (*Id.* at 5). The Government also correctly notes that hyperlipidemia has not been recognized by the CDC at this time as posing an increased likelihood of severe illness or death when infected with COVID-19. (*Id.*).

As an initial matter, this Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerability. The spread of COVID-19 in prisons has been well documented and FCI Allenwood has not been left untouched by this illness.[2] COVID-19 puts Mr. Hamidu at particular risk. With respect to Mr. Hamidu's medical conditions, the CDC has now recognized that individuals with liver disease, including hepatitis B and C, might be at a higher risk for severe illness from COVID-19.[3] Mr. Hamidu's medical records show that he has been diagnosed with this condition, but has had no medical treatment for it while incarcerated. (ECF No. 220-3). The Government does not dispute that Mr. Hamidu suffers from any of these health conditions. (ECF No. 239 at 4). The CDC has also

---

[2] *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/, last accessed July 6, 2021 at 9:00 a.m. (showing number of individuals who have recovered from COVID-19 while incarcerated at Allenwood facilities).
[3] *See* CDC, *What to Know about Liver Disease and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html#:~:text=People%20with%20cirrhosis%20%5Bliver%20scarring,without%20pre%2Dexisting%20liver%20disease., last accessed July 6, 2021 at 9:00 a.m.

indicated that people might be more likely to experience serious illness if their medical conditions are not well controlled; this does not mean that individuals with underlying conditions that are under control are at no elevated risk of severe illness.

This Court has discretion to determine for itself whether an incarcerated person has presented "extraordinary and compelling reasons" within the meaning of the First Step Act. Under the Sixth Circuit's decision in *Jones*, this Court is no longer bound by U.S.S.G. § 1B1.13 when considering compassionate release motions brought by incarcerated people on their own behalf. In addition to the CDC's guidance, other courts have noted the emerging medical findings regarding COVID-19 and liver diseases like hepatitis C. *See, e.g.*, *United States v. Williams*, No. 6:16-cr-00048, 2021 WL 232591, at *2 (E.D. Ky. Jan. 22, 2021); *United States v. Stephenson*, 461 F. Supp. 3d 864, 872 (S.D. Iowa May 21, 2020) (granting compassionate release for a prisoner with Hepatitis C); *United States v. Conner*, No. CR07-4095-LTS, 2020 WL 3053368, at *1 (N.D. Iowa June 8, 2020) (granting motion for compassionate release by petitioner with ongoing hepatitis B and C diagnosis). This Court finds that Mr. Hamidu's liver disease, which might place him at an increased risk of severe illness or death if he contracts COVID-19, constitutes "extraordinary and compelling reasons."

### C. Section 3553 Sentencing Factors Analysis

When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. A court does not need to "specifically articulat[e]" every single Section 3553(a) factor in its analysis; rather, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* For a reviewing court, this record will constitute both the original sentencing

proceeding and the compassionate release decision. *Id.* Section 3553(a) instructs a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
>
> (5) any pertinent policy statement ... issued by the Sentencing Commission ...;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Mr. Hamidu argues that he has behaved well while incarcerated: he has participated in educational programs, obtained his GED, kept a clean disciplinary record, worked, and paid his restitution. (ECF No. 224 at 2). He also emphasizes that he has three young children at home. (*Id.*; ECF No. 234 at 3). In opposition, the Government notes that Mr. Hamidu is subject to an ICE detainer. (ECF No. 239 at 5). A detainer "serves to advise another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of

that agency, for the purpose of arresting and removing the alien." 8 CFR § 287.7(a). The Government argues that there is "no guarantee" that he would be released from immigration detention while DHS pursues removal proceedings. (*Id.* at 5–6). The Government also argues that a reduction in sentence would not fully address the purposes of sentencing. (*Id.* at 6–8).

Courts resolving compassionate release motions have taken different approaches when a defendant is subject to an immigration detainer. Some courts have found that the existence of a detainer is not a sufficient reason to deny a compassionate release motion. *See, e.g.*, *United States v. Majalca-Aguilar*, No. CR 12-1619 RB, 2021 WL 1890105, at *3 (D.N.M. May 11, 2021) (granting defendant's sentence reduction motion despite existence of ICE detainer and noting that the Government offered "no persuasive reason" why a court could not grant compassionate release motion in that circumstance); *United States v. Banuelos*, No. 1:18-cr-58, 2020 WL 7495282, at *5 (S.D. Ohio Dec. 21, 2020) ("The Court notes that the existence of an ICE detainer alone does not require compassionate release denial."); *United States v. Yrorita*, No. 16-cr-20593, 2020 WL 4915555, at *4 (E.D. Mich. Aug. 21, 2020) (finding "mere speculation about the conditions at an ICE facility is an insufficient basis to deny compassionate release" and granting defendant's motion despite ICE detainer).

By contrast, other courts find that the purpose of a compassionate release motion is undermined where the individual seeking the relief will be subject to incarceration by another entity upon release. *See, e.g.*, *United States v. Richiez-Castillo*, No. 00-CR-54-RJA, 2021 WL 1746426, at *7 (W.D.N.Y. May 4, 2021) (noting inherent risks in transferring defendant to ICE custody and high rate of COVID-19 in defendant's home country, before denying motion because "likely consequences of a reduction in Defendant's sentence work against the stated driving force in his filing of this motion"); *United States v. Fernandez*, No. 2:13-CR-14, 2020

9

WL 7655171, at *4 (E.D. Tenn. Dec. 23, 2020) (finding that presence of ICE detainer weighed against granting motion); *but see United States v. Sama*, No. 19-cr-20026, 2020 WL 4474144, at *5 (E.D. Mich. Aug. 4, 2020) (releasing defendant who sought compassionate release to ICE detention and deportation, after weighing sentencing factors).

Still other courts find the existence of an ICE detainer most relevant when weighing the § 3553(a) sentencing factors. *See, e.g.*, *United States v. Medrano*, No. 06-CR-61 (LTS), 2021 WL 1856676, at *2 (S.D.N.Y. May 10, 2021) (considering existence of ICE detainer in assessment of § 3553(a) sentencing factors and granting sentence reduction); *United States v. Liriano*, No. 03 Cr. 227-3, 2021 WL 1721817, at *2 (S.D.N.Y. Apr. 30, 2021) (finding presence of an ICE detainer demonstrated that defendant would not pose danger to any persons or the community); *United States v. Lopez*, No. 97-01117, 2020 WL 6298061, at *7 (D. Haw. Oct. 27, 2020) (noting that deportation to Mexico subject to ICE detainer would moot any public safety concerns).

This Court finds that the existence of an ICE detainer alone does not frustrate a defendant's motion for compassionate release; rather, it must be part of a holistic assessment to determine whether a sentence reduction is appropriate in each unique context. In Mr. Hamidu's case, the Government notes that there is "no guarantee" that he would be released from immigration detention while DHS initiates removal proceedings. This does not mean, however, that there is no guarantee that he will not be released, either. Thus, the existence of the ICE detainer does not wholly undermine Mr. Hamidu's request because it is not virtually certain that he will remain detained for the duration of his removal proceedings.

On October 10, 2019, the Defendant was sentenced to 42 months of incarceration, followed by 3 years of supervised release after he pled guilty to one count of conspiracy to

commit money laundering in violation of 18 U.S.C. § 1956(h). (ECF No. 176). He received a sentence below the advisory guidelines range. He was also ordered to pay $5,026,402.60 in restitution, of which $3,385,081.05 is joint and several with his co-defendants and $1,641,321.55 is solely the responsibility of Mr. Hamidu. (*Id.*). This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the Defendant. He began serving his sentence on November 10, 2019 and has a projected release date of October 11, 2022. (ECF No. 220 at 2; ECF No. 234-3). He has served approximately 45 percent of his 42-month sentence.[4] He has made payments toward his restitution as he has been employed while incarcerated, but any payments are necessarily limited in light of the large financial amount imposed against him in the judgment.

This Court must consider both the health risk to the individual and the interests served by continued incarceration based on the nature and seriousness of the offense. In imposing a sentence, a sentencing court's task is to "'impose a sentence sufficient, but not greater than necessary, to comply with purposes' of the statutory sentencing scheme." *United States v. Presley*, 547 F.3d 625, 630–31 (6th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). This Court finds that Defendant's request would greatly undermine the statutory purposes of sentencing. Mr. Hamidu has served only half of his sentence, a sentence which is already significantly below the advisory guidelines. Furthermore, Mr. Hamidu participated in an international romance fraud scheme with serious financial consequences. Victims suffered $5,026,402.60 in losses. (PSR ¶¶ 20–21). Mr. Hamidu was directly connected with an unindicted co-conspirator based in Ghana, who directed fraud proceeds into accounts within Mr. Hamidu's control. (*Id.* ¶ 29). Mr.

---

[4] At present, Mr. Hamidu is projected to be released after serving 35 months. If this projection remains accurate for continued good behavior, he has served approximately 54 percent of his projected sentence.

Hamidu was solely responsible for $1,641,321.55 in losses suffered by 37 victims; a serious proportion of the overall harm attributed to the co-defendants. (*Id.* ¶ 36). While this Court is sympathetic to Mr. Hamidu's desire to assist in caretaking for his children, this Court is also tasked with ensuring that it imposes sentences sufficient to achieve their statutory purposes. One major such purpose is deterrence, both of the individual and of society as a whole. To further reduce the sentence of an individual who pled guilty to causing significant financial harm to community members and received a below guideline sentence could send a troubling message to other aspiring fraudsters. Mr. Hamidu's sentence as imposed also reflects the seriousness of his offense and his personal culpability. This Court therefore finds that the retribution, deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against a sentence reduction.

### D. CONCLUSION

For these reasons, Mr. Hamidu's Second Motion for Compassionate Release (ECF No. 224), as supplemented by counsel (ECF No. 234), is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 6, 2021**